UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CAUSE NUMBER 3:11-CR-39(01)RM |
| | ) | |
| KEITH BUTCHKO | ) | |

OPINION AND ORDER

On March 15, 2011, Keith Butchko was pulled over for a traffic violation and found to be in possession of a pound of marijuana. Special Operations officers arrived and believed that because the marijuana and the buds weren't compressed and were in a clear plastic bag, the marijuana had been harvested recently. They believed the marijuana was from a grow operation and, given the time of year, that it was an indoor grow operation. Mr. Butchko was arrested and declined to speak to the officers.

The officers learned upon their return to the Special Operations office that Mr. Butchko had been arrested before for manufacturing marijuana. They were so informed by Lt. David Ryans, also a Special Operations Officer, who was aware of Mr. Butchko's 2005 home grow operation. The officers decided to go to Mr. Butchko's home on Moss Road.

Mr. Butchko's 20-year-old son, Ryan, answered the door when the officers knocked. The officers, standing on the porch, explained that Keith Butchko had been arrested with a pound of marijuana, and asked for Ryan Butchko's permission to search the home. Officer Aaron Brick read aloud the consent to search form required

by Indiana law, explaining Ryan Butchko's right to talk to an attorney or refuse the officers' request to search the home. The officers didn't tell Ryan Butchko that they would search with or without Ryan Butchko's consent or that he would be arrested if he didn't consent. Ryan Butchko told the officers that, he'd "rather you guys not" search the house, but "what choice do I got." Ryan Butchko then signed the Consent Form after a short discussion.

Ryan Butchko told the officers he had lived in the house most of his life. As they all entered the home, Ryan Butchko told the officers that he had full run of the house, but the officers couldn't search his dad's bedroom or office. The doors of those rooms were shut and officers didn't enter those rooms during the consented search. Officers walked into the home and Officer Robert Wise found recently harvested marijuana stalks in the kitchen almost immediately.

Lt. Ryans arrived and remembered that in his earlier arrest for manufacturing marijuana in the same Moss Street house, Mr. Butchko had used a room in the basement to grow marijuana. Officer Ryans and another officer went into the basement and swung open a cabinet attached to the wall; as in a movie, a door in the back of the cabinet led to a door to a room behind the cabinet. The inner room was locked, but a key was on the shelf, so the officers opened the door and saw a grow operation in the inner rooms.

Lt. Ryans then decided to get a search warrant to allow a more extensive search than ordinarily is done pursuant to a consent, and to gain access to Keith Butchko's bedroom and office. In executing the search warrant at the Moss Road address, officers

reportedly found a marijuana grow in the basement of 115 plants, fertilizers, lights, scales, baggies and loose marijuana, a firearm, and cash in various areas of the home. Keith Butchko moves to suppress everything found in the house before and after the search warrant was obtained.

Mr. Butchko raises four grounds for suppression. First, he argues that the evidence seized in the search of his home must be suppressed because he wasn't arrested at home. This provides no reason for suppression. Whether Mr. Butchko was arrested at home simply affects the range of available exceptions to the warrant requirement. At issue is the discovery of the grow operation in the hidden basement room. That grow operation was discovered without a warrant, so the search in which it was discovered is presumed to have been unreasonable, Groh v. Ramirez, 540 U.S. 558-560 (2004); Katz v. United States, 389 U.S. 347, 357 (1967), and the government must establish its reasonableness. A showing of reasonableness of a warrantless search ordinarily is made by showing the applicability of a recognized exception to the warrant requirement. The first search of the Moss Street home can't be justified as a search incident to arrest since Mr. Butchko wasn't arrested there, *see* Chimel v. California, 395 U.S. 752 (1969), but Mr. Butchko's arrest away from his home has little other impact on the analysis. The warrant requirement for home searches is subject to several exceptions. Kentucky v. King, ___ S. Ct. ___, 2011 WL 1832821 at *5 (U.S., May 16, 2011); Brigham City v. Stuart, 547 U.S. 398, 403 (2006). One of those exceptions, upon which the government relies today, is voluntary consent given by a person with actual or apparent authority. Georgia v. Randolph, 547 U.S. 103, 110

3

(2006); Illinois v. Rodriguez, 497 U.S. 177, 186 (1990); United States v. Matlock, 415 U.S. 164, 171 (1974).

Mr. Butchko next argues that the evidence seized in the search of his home must be suppressed because there was no probable cause to search the home. This is a close question as a factual proposition. "Law enforcement officials have probable cause to search a particular place where 'the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found.'" United States v. Aljabari, 626 F.3d 940, 944 (7th Cir. 2010) (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)). The officers had reason to believe that Mr. Butchko, who had grown marijuana in his home five or six years earlier, had a pound of home-grown marijuana in his possession. The court can't leap to agreement with Mr. Butchko that the officers lacked probable cause to search his home.

But the court needn't decide the probable cause question because probable cause isn't required if consent justifies the search. United States v. Stribling, 94 F.3d 321, 324 (7th Cir. 1994) ("Because Stribling voluntarily consented to the search of the car, neither probable cause nor exigent circumstances was necessary for Eisenbarger to search the trunk legally."). Mr. Butchko cites no authority for his implicit proposition that police officers must have probable cause to seek consent for a search.

Mr. Butchko next argues that the evidence seized in the search of his home must be suppressed because there were no grounds for Ryan Butchko to consent to the search of the residence. Grounds aren't a legal requirement for a valid consent, though

4

the person's possible reasoning might be relevant in determining whether voluntary consent was given. But if the consent was voluntary, the law doesn't inquire further into the consenting occupant's motivation.

This consent was voluntary. Ryan Butchko's comment about having no choice suggests an involuntary consent, but the rest of the factors ordinarily considered when examining the totality of the circumstances, *see* United States v. Santiago, 428 F.3d 699, 704-705 (7th Cir. 2005), outweigh that factor considerably. Ryan Butchko was about 20 years old, could read and write, had been informed of his rights (including his right to refuse consent and to speak to an attorney before deciding), had been asked for his consent only once, hadn't been physically threatened or intimidated, and hadn't been placed under arrest. By complying with the Indiana advice of rights requirements adopted in Pirtle v. State, 323 N.E.2d 634 (Ind., 1975), the officers did far more than federal law requires to assure that the consent was voluntary. United States v. Price, 54 F.3d 342, 347 (7th Cir. 1995).

Finally, Mr. Butchko argues that the evidence seized in the search of his home must be suppressed because Ryan Butchko couldn't consent to search of anything other than his own room and common areas.

> A warrantless search does not violate the Fourth Amendment if a person possessing, or reasonably believed to possess, authority over the premises voluntarily consents to the search. Apparent authority turns on whether the facts available to the officer at the time would allow a person of reasonable caution to believe that the consenting party had authority over the premises. The existence of voluntary consent is a question of fact to be determined based on the totality of the circumstances.

5

United States v. King, 627 F.3d 641, 657-658 (7th Cir. 2010) (quotations and citations omitted).

Ryan Butchko told the officers that he and his father were the only occupants of the home (and the officers confirmed that no one else was in the home), that he had lived there for most of his life, and that there were only two rooms he wasn't allowed to enter. The officers were free, he said, to search any other part of the house. Officers have no duty to inquire further as to a third party's authority unless "the circumstances make the authority questionable in the first place." United States v. Pineda-Buenaventura, 622 F.3d 761, 777 (7th Cir. 2010). No such circumstances existed here. Ryan Butchko had apparent authority to consent to the search of the rest of the house, including the entire basement.

The search conducted before obtaining the search warrant was reasonable. It was conducted pursuant to the voluntary consent of a person with apparent authority to permit a search of all but two of the home's rooms, and the search did not exceed the scope of that content. The court DENIES Mr. Butchko's motion to suppress [Doc. No. 17].

SO ORDERED.

ENTERED:   May 25, 2011

/s/ Robert L. Miller, Jr.
Judge
United States District Court